IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 20, 2011 Session Heard at Memphis


ROBERTO CARLOS URTUZUASTEGUI
a/k/a Jose M. Carrion-Casillas
v.
GEORGE D. KIRKLAND, ET AL.


Direct Appeal from the Circuit Court for Shelby County
No.  CT-005324-08     Charles O. McPherson, Special Judge


No. W2010-01016-COA-R3-CV - March 17, 2011


This is an appeal from the trial court's grant of summary judgment in favor of Appellees and from the trial court's grant of a Tennessee Rule of Civil Procedure 41.02(1) motion for involuntary dismissal in favor of Appellees.  The trial court granted both motions upon its finding that Appellant had committed fraud upon the court in filing his complaint under an assumed name.  Specifically, the court granted the motion for summary judgment finding that the statute of limitations had expired because the amended complaint did not relate back to the original complaint, which the court determined was a nullity *ab initio*.  The Rule 41.02 motion was granted based upon the court's finding that the Appellant had perpetrated a fraud upon the court in filing the complaint under an assumed name.  Concluding that there is a dispute of material fact as to whether Appellant committed fraud and, specifically, as to whether Appellant's alleged mental incapacity negates a finding of fraud, we reverse both the order on the motion for summary judgment and the order granting the Rule 41.02 motion. We remand for further hearing on the issues of fraud and mental incapacity. Reversed and remanded.


**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**


J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Michael C. Skouteris, Russell W. Lewis, IV,  and William B. Walk, Jr., Memphis, Tennessee, for the appellant, Roberto Carols Urtuzuastegui.

Carl Wyatt and Lewis W. Lyons, Memphis, Tennessee, for the appellees, George D. Kirkland and Vickers Distributing and Transfer, Inc.

## OPINION

The underlying facts of this case are undisputed. On June 12, 2008, Appellant Roberto Carlos Urtuzuastegui was injured when his motorcycle collided with a truck driven by George Kirkland, who was allegedly employed by Vickers Distribution and Transfer, Inc. at the time of the accident.[1] Mr. Urtuzuastegui is an undocumented worker who immigrated from Mexico under the assumed name of Jose M. Carrion-Casillas. The police report for the accident, the medical records, and all other documents relevant to this case have been made in Mr. Urtuzuastegui's assumed name.

On October 31, 2008, Mr. Urtuzuastegui filed suit against George D. Kirkland, Vicker's Distribution and Transfer, Inc., Vickers Logistics Services, Inc., Vickers Leasing Services, L.L.C., and Vickers Warehousing Services, L. L. C. (together, "Vickers," or "Appellees"). Mr. Urtuzuastegui was allowed to amend his complaint on December 4, 2009 to include a prayer for punitive damages. Both the original complaint and the first amended complaint are filed under Mr. Urtuzuastegui's assumed name, Jose M. Carrion-Casillas. Mr. Urtuzuastegui's attorney allegedly did not know that the name Jose M. Carrion-Casillas was an assumed name at the time of the filing of the original or first amended complaints. The parties allegedly learned about the use of the assumed name on October 20, 2009, during a discovery deposition. As a result of that discovery, on October 22, 2009, Vickers filed a motion for summary judgment on the ground that "the instant lawsuit is brought in the name of an individual who does not exist." Consequently, Vickers argued that the allegedly "fraudulent complaint filed under the false name Jose M. Carrion-Casillas is a nullity and did not commence suit so as to toll the one year statute of limitations." Concurrent with the motion for summary judgment, Vickers also filed a separate motion for involuntary dismissal under Tennessee Rule of Civil Procedure 41. As a basis for the Rule 41 motion, Vickers asserted that:

> [Mr. Urtuzuastegui] has willfully and intentionally initiated and prosecuted this lawsuit under a false identity, and has been untruthful under oath in his Responses to [the] First Set of Interrogatories Propounded...in an attempt to conceal his true identity. Specifically, the named Plaintiff, Jose M. Carrion-Casillas, is not a real person. Not only did he use a false name

---

[1] Vickers denies that it employed Mr. Kirkland, and denies that it owned the truck driven by Mr. Kirkland.

-2-

to initiate and prosecute this lawsuit, he provided the same false name in sworn discovery responses. In addition to providing a false name in discovery responses, he also provided a false date of birth and false Social Security Number. Thus, the Interrogatory Answers were not signed by the person making them. These transgressions are in direct violation of the Tennessee Rules of Civil Procedure, including, without limitation, Rules 8.01, 10.01, and 33.01.

In response to these motions, Mr. Urtuzuastegui moved the court for leave to file a second amended complaint to "cure a misnomer." Specifically, Mr. Urtuzuastegui couched his use of an "alias" as a "mistake." Mr. Urtuzuastegui also supplemented his interrogatory responses to reflect his given name. Vickers opposed the motion to amend the complaint. On November 30, 2009, the trial court allowed the amendment. In granting the motion, the court stated, in relevant part, that:

> The Court finds that given the liberal construction of Rule 15 of the Tennessee Rules of Civil Procedure, Plaintiff's Motion to Amend is well taken and should be granted. The Court further finds that Defendants may then address any issues related to the Amendment including but not limited to its relation back to the original filing....

On December 4, 2009, Mr. Urtuzuastegui filed his second amended complaint, which adds his birth name and subordinates the previously used assumed name to a mere alias.

Vickers' motions proceeded to hearing on December 10, 2009. At that hearing, Vickers primarily relied upon two cases, ***Zocaras v. Castro***, 465 F.3d 479 (11th Cir. 2006)and ***Dotson v. Bravo***, 321 F.3d 663 (7th Cir. 2003) as authority for its position. We will discuss these cases in more detail below; however, based upon these cases, Vickers argued that the mere fact that Mr. Urtuzuastegui's original complaint was filed under an assumed name should, *ipso facto*, render that complaint a nullity *ab initio*. In response, Mr. Urtuzuastegui's attorney asserted that, because of the severity of his injuries, Mr. Urtuzuastegui was incapacitated at the time of the filing of the original complaint as well as at the time the first set of interrogatories were answered. Based upon his alleged incapacity, Mr. Urtuzuastegui's attorney argued that the use of the assumed name was not fraudulent, but rather a mistake that Mr. Urtuzuastegui sought to cure when his capacity was restored. In support of this argument, Mr. Urtuzuastegui provided the court with the affidavits of several medical professionals who stated, in relevant part, that, for at least the first eight months after the accident, Mr. Urtuzuastegui: (1) "was heavily medicated," which impaired his cognition, (2)

"had a language, receptive and expressive language disorder," (3) had "severe brain damage," and (4) had "horrendous pain syndrome," which would prevent normal cognition. Based upon these alleged medical problems, Mr. Urtuzuastegui's attorney argued that his client could not have committed an intentional fraud upon the court and that there was at least a question of material fact as to whether Mr. Urtuzuastegui's condition excused the filing of the complaint under his assumed name. The trial court, however, was unpersuaded by Mr. Urtuzuastegui's argument and, by order of December 18, 2009, it granted Vickers' motion for summary judgment, specifically holding that:

> The Court finds that the Plaintiff's original complaint was filed in the name of a wrongful person, and as such, the filing of the original complaint constitutes a nullity. As such, the Court finds that the Second Amended Complaint, which substitutes the actual name of the Plaintiff, came well after the statute of limitations had expired, and Plaintiff's Amended Complaint is time barred.

The court's December 18, 2009 order incorporates, by reference, the court's statements from the bench. In relevant part, the court states:

> [It] is obvious to this Court that this gentleman [i.e., Mr. Urtuzuastegui] came into this country illegally and elected a fictitious name to operate under even to the point of getting a marriage license in that name [i.e., his assumed name, Jose M. Carrion-Casilas] when he well knew at that time that that was not his name; getting a driver's license in that name, when he knew well that it was not his name.
>
> It appears to the Court that when he started trying to correct this situation was after he got caught....
>
> So, after consideration of all of the evidence that was submitted by the plaintiff and all of the cases that both sides have submitted, the Court must find that this was a fraud upon the Court and it doesn't matter whether it was intentional[] or not intentional[] if it is a fraud upon the Court.
>
> This man [i.e., Mr. Urtuzuastegui] set this wheel in motion when he came into this country illegally and selected a name that he well knew was not his name; selected a Social Security number, that he well knew was not his Social Security number.
>
> So, the first filing of the first suit then constitutes a

-4-

nullity.    And   therefore   the   filing   of   the   [amended complaint]...comes well after the statute of limitations had passed.

So the Court is going to grant the motion to dismiss on the   basis of a nullity and on the basis that the statute of limitations has barred.

Counsel for Vickers then asked the trial court for clarification as to whether it was granting the motion for summary judgment or the Tennessee Rule of Civil Procedure 41 motion to dismiss.  The court explained that "[b]oth motions [are] granted," and stated that "[t]he involuntary dismissal is based on the fraud that was perpetuated in the filing of the suit in the wrongful name," and that the grant of summary judgment is "based on the statute of limitations."  Vickers' attorney prepared an order on the summary judgment and a separate order on the Rule 41 dismissal.  The trial court entered the summary judgment order (*see supra* order of December 18, 2009), but declined to enter the Rule 41 order at that time.  The court reasoned that, given the grant of summary judgment, the Rule 41 order was unnecessary.  Because the court had only entered the summary judgment order, the issue was narrowed to the consideration of Tennessee Rule of Civil Procedure 56.  Accordingly, on January 15, 2010, Mr. Urtuzuastegui filed a motion to alter or amend the order granting summary judgment under Tennessee Rule of Civil Procedure 59.

Mr. Urtuzuastegui's Rule 59 motion was heard on March 3, 2010.  By Order of March 15, 2010, the court denied Mr. Urtuzuastegui's motion.  The court's order incorporates, by reference, its ruling from the bench made at the March 3, 2010 hearing.  Although the court had only entered the order on the motion for summary judgment, at the end of the March 3, 2010 hearing, counsel for Vickers reminded the court of its previous ruling, at the December 10, 2009 hearing (*supra*), wherein it orally granted both the motion for summary judgment and the Rule 41 motion for involuntary dismissal.  Vickers' attorney explained to the court that it had only entered the order on the motion for summary judgment, and  asked the court to enter the order granting the Rule 41 motion so that both orders could be reviewed by this Court on appeal.  Counsel for Mr. Urtuzuastegui objected, arguing that Tennessee Rule of Civil Procedure 41.02 contemplates dismissal of cases for violation of a court order, which Mr. Urtuzuastegui had not done.  The court was not persuaded by this argument and on March 3, 2010, entered its order granting Vickers' motion  for involuntary dismissal under Tennessee Rule of Civil Procedure 41.  In response, Mr. Urtuzuastegui filed a Rule 59 motion to alter or amend the order granting involuntary dismissal.  Like the Rule 59 motion on the grant of summary judgment, this motion was also denied by the trial court.

Mr. Urtuzuastegui appeals, raising one issue for review as stated in his brief:

Is there any genuine issue of material fact as to whether the statute of limitations was tolled during Mr. Urtuzuastegui's medical incapacity.

As detailed above, this case presents us with a rather convoluted procedural history, wherein the trial court allowed Mr. Urtuzuastegui to file a second amended complaint to reflect his proper name, then ostensibly reversed that decision by finding that the original complaint, which was filed under the assumed name, was a nullity based upon fraud perpetrated by Mr. Urtuzuastegui. Consequently, the court reasoned that the second amended complaint did not relate back to the original complaint because it was void *ab initio*, and that the suit was, therefore, barred by the one year statute of limitations. To further complicate matters, the court granted Vickers' motions for both summary judgment and involuntary dismissal from the bench, but then declined to enter the order on the involuntary dismissal. Then, after the hearing on Mr. Urtuzuastegui's Rule 59 motion addressing only the grant of summary judgment, the court changed its mind and entered the order granting the involuntary dismissal, which put Mr. Urtuzuastegui in the position of having to file a second Rule 59 motion based on the Rule 41 dismissal.

## Summary Judgment

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." **Mathews Partners, LLC v. Lemme**, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing **Hunter v. Brown**, 955 S.W.2d 49, 50-51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. **Hannan v. Alltel Publ'g Co.**, 270 S.W.3d 1, 8-9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing **Byrd v. Hall**, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or

ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether a factual dispute exists. "Summary judgment procedure is not a substitute for trial. It is only when there is no disputed issue of material fact that a summary judgment should be granted. If such fact issue is present, the matter must not be resolved by a battle of affidavits, but must be resolved by a trial on the merits." *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976) (citations omitted). In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, LLC, 2009 WL 3172134, at *3 (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." Id. "Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. S. Cumberland Amoco, et al*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)).

The trial court's ruling on both the motion for summary judgment and the motion for involuntary dismissal rests upon the court's assessment that Mr. Urtuzuastegui committed a fraud upon the court in using an assumed name to file his case. Specifically, the statute of limitations ground that the court states as its reason for the grant of summary judgment hinges upon whether the initial complaint was void *ab intio* due to Mr. Urtuzuastegui's fraud. The elements of positive fraud are that: (1) the representation must have been made as to an existing fact, which is false and material; (2) knowledge of the falsity (i.e., it was made knowingly or without belief in its truth, or recklessly without regard to whether it is true or false); and (3) the party asserting fraud must have reasonably relied upon the representation to his or her detriment. *See, Black v. Black*, 166 S.W.3d 699, 705 (Tenn. 2005) (quoting *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66–67 (Tenn. 2001)). Where a claim of fraud is presented, the issue ordinarily can only be developed upon a full trial of the action. *See Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978). As a general rule, summary judgment is not an appropriate procedure for the disposition of issues related to fraud. *See Long v. State Farm Fire & Casualty Co.*, 510 S.W.2d 517, 519 (Tenn. Ct.

App.1974). Nevertheless, it is incumbent upon the party asserting fraud to produce some competent and material evidence legally sufficient to support his or her claim or defense. *Id*. In short, fraud is never presumed and, where it is alleged, facts sustaining it must be clearly made out. *Hiller v. Hailey*, 915 S.W.2d 800, 802 (Tenn. Ct. App. 1995).

In its motion for summary judgment, Vickers relies upon the complaint, and amended complaint, which were filed under Mr. Urtuzuastegui's assumed name. Vickers also relies upon Mr. Urtuzuastegui's answers to interrogatories, wherein he failed to clarify his given name. Vickers contends that there is no dispute of material fact that Mr. Urtuzuastegui filed those pleadings under an assumed name and no dispute that he further perpetrated his fraud by failing to truthfully answer discovery. In response, Mr. Urtuzuastegui filed the affidavits of three of his doctors regarding his medical condition. Dr. Carolyn Chambers, a certified brain injury specialist at the Regional Medical Center's Traumatic Brain Injury Services Department states that, in June 2008, she received a referral for Mr. Urtuzuastegui following his accident. Dr. Chambers stated her assessment of his condition as follows:

> 6. The CT scan of the head taken...on June 12, 2008...showed a left partial-occipital subdural hematoma measuring 5.7 mm in maximum diameter with an associated 3.5 mm left to right midline shift. There is also a small intraparenchymal hemorrhage in the right parietal lobe high on convexity, trace blood along the flax, and left occipital condyle fracture.

Dr. Shelly Timmons, who is board certified in the field of neurosurgery, was consulted regarding Mr. Urtuzuastegui's head injury. According to her affidavit, during his hospital stay (June 12, 2008 until July 3, 2008), Dr. Timmons observed that Mr. Urtuzuastegui "was suffering from significant neurological deficits, i.e., short-term memory, attention/concentration, cognition, and focus, even after resolution of the subdural hematoma." Dr. Timmons continued to see Mr. Urtuzuastegui after his release from the hospital. During this time, Dr. Timmons observed:

> 9. [A]s I continued to follow him [i.e., Mr. Urtuzuastegui] after discharge from the Regional Medical Center, [Mr. Urtuzuastegui] continued to suffer from significant impairments to his cognition, memory, attention and other mental capabilities for the next six to nine months.
>
> 10. As the patient improved with respect to his traumatic brain injury after this nine month period post injury, my primary focus turned to the severe planplexopathy of the right brachial plexus

and the related pain syndrome. I believed that his traumatic brain injury symptoms would continue to improve over the next several month, and I recommended various modalities such as occupational therapy for his brachial plexus injury.

11. As expected, over the next several months, and specifically on October 20, 2008, I noted "decreased attention and memory," but [Mr. Urtuzuastegui] was making gradual improvement.

12. At the following visit, on January 5, 2009, I documented that "his short term memory is unchanged and still fairly poor per his wife and per him." However, I expected continued memory and cognitive impairments at this juncture and, was, thus, not alarmed by these reports.

13. At this point, six months post-injury, I considered his residual cognitive and memory impairments to be long-term. Nevertheless, I was encouraged by the progress and improvement to the cognitive and memory impairments which had occurred from June 2008 to January 2009.

\*                                    \*                                    \*

20. It is also my opinion within a reasonable degree of medical certainty, that for several months following the accident (noted as recent[ly] as January 5, 2009 office note), Mr. [Urtuzuastegui] suffered from substantial cognitive, memory and attention deficits.

21. It is further my opinion that Mr. [Urtuzuastegui's] ability to understand, appreciate and focus on his legal affairs during this period of recovery would have been impaired due to the brain injury.

22. Apart from the brain injury, Mr. [Urtuzuastegui] was suffering from depression and severe neuropathic pain, both of which would have also interfered with his focus and attention. Dr. Deflumere [*see* discussion of Dr. Deflumere's affidavit, *infra*] was treating Mr. [Urtuzuastegui] for these conditions.

-9-

*                         *                         *

24. Mr. [Urtuzuastegui's] physical injuries (including the loss of use of his right hand and arm) and his mental impairments rendered him substantially unable to care for himself or to manage his personal business during the period of time in which he was recovering from his catastrophic physical injuries and brain damage.

Dr. Charlotte A. Deflumere, who specializes in the treatment and management of chronic pain, began treating Mr. Urtuzuastegui on July 22, 2008. In relevant part, Dr. Deflumere stated, in her affidavit, that:

7. For the first six months, [Mr. Urtuzuastegui] was maintained on high dose[s] of opiates due to his severe neuropathic pain and post-operative pain with the continued need for surgery. Chronic pain syndromes of this magnitude do adversely impact an individual's ability to think, concentrate, and reason.

8. Most recently, I prescribed and maintained Mr. [Urtuzuastegui] on Methodone...MS Contin...Morphine Sulphate...Trazadone...Neurontin...and Pristiq....

9. The side effects of these medication[s]...are numerous, including drowsiness, dizziness, confusion and other adverse effects on cognition, memory and attention.

*                         *                         *

11. Between the traumatic brain injury, side effects of the medications and the depression, I noticed Mr. [Urtuzuastegui] having difficulty with recalling information and expressing his thoughts to me, particularly in the first six months after the injury.

*                         *                         *

17. It is my opinion within a reasonable degree of medical certainty, that for several months following the accident, Mr. [Urtuzuastegui] suffered from substantial cognitive, memory

-10-

and attention deficits....

> 18. It is further my opinion that Mr. [Urtuzuastegui's] ability to understand, appreciate and focus on legal or business matters during the first six months post-accident would have been impaired due to his brain injury, depression and side effects of his medication.[2]

While Vickers asserts that Mr. Urtuzuastegui's long-standing practice of using his assumed name in all of his business and legal dealings shows a pattern of behavior that was continued in the filing of the instant lawsuit, we cannot discount the testimonies of Mr. Urtuzuastegui's treating physicians concerning his capacity. While it is an undisputed fact that Mr. Urtuzuastegui used his assumed name almost exclusively in his dealings, we are concerned only with the use of the assumed name in the filing of this lawsuit, and specifically, whether Mr. Urtuzuastegui committed a fraud in this case. From the trial court's statements from the bench, which were incorporated into its order (*see supra*), it appears that it focused on Mr. Urtuzuastegui's use of his assumed name from the time he entered this country. While we may concede that Mr. Urtuzuastegui's use of his assumed name in various other circumstances constitutes illegal acts or even fraud, based upon the opinions of his medical team, and from reading those affidavits in the light most favorable to Mr. Urtuzuastegui, we conclude that there is a dispute of material fact as to whether Mr. Urtuzuastegui's alleged fraud in filing this lawsuit was negated, or at least mitigated, by his lack of capacity. This is a question that the trial court failed to address. Given the affidavits of the doctors in this case, we conclude that there is a dispute of material fact on the issue of Mr. Urtuzuastegui's mental capacity and its effect on the alleged fraud perpetrated in the filing of this lawsuit. Consequently, we conclude that the trial court erred in granting Vickers' motion for summary judgment in light of the dispute of material fact.

The Vickers also contend that the issue of capacity was not properly before the trial court because Mr. Urtuzuastegui failed to specifically plead the defense. While a plaintiff asserting incapacity sufficient to toll the statute of limitations is usually required to specifically plead that defense, *see, e.g.,* **Gross v. Disney**, 32 S.W. 632 (Tenn. 1895); *accord* **Jones v. Coal Creek Mining & Mfg. Co.**, 180 S.W. 179, 184 (Tenn. 1915), in the instant case, Mr. Urtuzuastegui did not initially set out to toll the statute of limitations based upon his lack of capacity. Rather, at the time of the filing of the original complaint, Mr. Urtuzuastegui was within the relevant statute of limitations. It was only when Vickers, in the

---

[2] We note that, in their respective affidavits, all three doctors refer to Mr. Urtuzuastegui by his assumed name, Jose M. Carrion-Casillas. Mr. Urtuzuastegui was admitted to the hospital under his assumed name.

motion for summary judgment and the Rule 41.02 motion, asserted that Mr. Urtuzuastegui's initial complaint (and first amended complaint) was void *ab inito* based upon fraud, that the issue of Mr. Urtuzuastegui's mental capacity became relevant. So, in short, Mr. Urtuzuastegui averred lack of capacity in response to the motions filed by Vickers and not as a defense in his initial pleading. Consequently, we conclude that the issue of lack of capacity was properly before the trial court.

### Tennessee Rule of Civil Procedure 41.02 motion

Although we have determined above that the trial court erred in granting Vickers' motion for summary judgment based upon the dispute of material fact concerning Mr. Urtuzuastegui's mental capacity, because the trial court also granted Vickers' Rule 41.02 motion, we must now determine whether the trial court was correct in so doing.

In Tennessee, trial courts have inherent authority to control cases on their dockets and, when it appears that a plaintiff is prosecuting a case in bad faith, dismissal is appropriate. *See Alexander v. Jackson Radiology Associates, P.A.*, 156 S.W. 3d 11 (Tenn. Ct. App. 2004). Accordingly, Tennessee Rule of Civil Procedure 41.02 provides for dismissal of a lawsuit for failure to comply with the Rules of Civil Procedure:

> **Involuntary Dismissal —Effect Thereof**. — (1) For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

A trial court's decision to dismiss under Tennessee Rule of Civil Procedure 41.02(1) is reviewed under an abuse of discretion standard. *See Hodges v. Attorney General*, 43 S.W. 3d 918, 921 (Tenn. Ct. App. 2000). In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010), Justice Koch succinctly stated this Court's role when asked to review a question involving the trial court's discretion:

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness.

*Lee Medical*, 312 S.W.3d at 524-25 (citations omitted).

In *Langlois v. Energy Automation Systems*, No. M2009-00225-COA-R3-CV, 2009 WL 4931372 (Tenn. Ct. App. Dec. 21, 2009) this Court cautioned that:

Dismissal for failure to prosecute or failure to abide by discovery rules is a severe sanction that runs counter to the judicial system's general objective of disposing of cases on the merits; for this reason, the judiciary generally favors lesser sanctions when appropriate.

*Id*. at *1.

In discussing the Federal counterpart (i.e., Fed. R. Civ. P. 41(b)) to Tennessee Rule of Civil Procedure 41.02(1), our sister courts have likewise cautioned that, although Rule 41(b) makes clear that a trial court has discretion to impose sanctions on a party who fails to adhere to court rules, that discretion is not unlimited, and the "[d]ismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir.1985). Dismissal with prejudice is not proper unless "the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005). Mere negligence or confusion is not sufficient to justify a finding of...willful misconduct. *McKelvey v. AT & T Techs*., Inc., 789 F.2d 1518, 1520 (11th Cir. 1986).

In its argument that the trial court was correct in granting the Rule 41.02 motion in

this case, Vickers relies upon the case of *Zocaras v. Castro*, 465 F.3d 479 (11th Cir. 2006). *Zocaras* was a Section 1983 case filed by the plaintiff against several arresting officers. The *Zocaras* plaintiff, like Mr. Urtuzuastegui, filed his suit under an assumed name. *Id*. The *Zocaras* plaintiff, like Mr. Urtuzuastegui, was deposed and, while under oath, again gave a false name. *Id*. When the use of his assumed name was discovered, the *Zocaras* plaintiff, like Mr. Urtuzuastegui, tried to amend his complaint to add his real name. *Id*. Moreover, the *Zocaras* plaintiff, like Mr. Urtuzuastegui, had a history of using an assumed name. The *Zocaras* Court held that, although the plaintiff possibly had a cause of action using his real name, when he attempted to perpetrate a fraud on the Court in filing suit under his assumed name, he lost that potential claim. In reaching its decision, the *Zocaras* Court specifically stated that:

> A trial is not a masquerade party nor is it a game of judicial hide-n-seek where the plaintiff may offer the defendant the added challenge of uncovering his real name. We sometimes speak of litigation as a search for the truth, but the parties ought not have to search for each other's true identity. Rule 10(a) requires that the name of the parties be disclosed in the complaint; Rule 11 forbids lying in pleadings, motions, and other papers filed with the court; and Rule 41(b) provides for dismissal with prejudice as the ultimate sanction for violation of the rules. Fed. R. Civ. Pro. 10(a); Fed. R. Civ. Pro. 11; Fed. R. Civ. Pro. 41(b).

*Zocaras v. Castro*, 465 F.3d at 484.

Vickers further relies upon the case of *Dotson v. Bravo*, 321 F.3d 663 (7th Cir. 2003), wherein the Illinois court dismissed a plaintiff's case after it was discovered that the lawsuit had been filed under a false name. In its ruling, the *Dotson* court states, in relevant part:

> Filing a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action....The instant case represents precisely the situation where one party's conduct so violates the judicial process that imposition of a harsh penalty is appropriate not only to reprimand the offender, but also to deter future parties from trampling upon the integrity of the court.

***Dotson***, 321 F. 3d 668.

Although the facts of ***Zocaras*** and ***Dotson*** are certainly similar to those presented in the case at bar, there is one distinction between ***Zocaras*** and ***Dotson*** and the instant appeal. In ***Zocaras*** and ***Dotson***, there was no allegation that either of the plaintiffs lacked capacity. Consequently, the ***Zocaras*** and ***Dotson*** Courts had no basis on which to find that the plaintiffs' actions in filing their respective lawsuits under their assumed names was anything but willful. Here, and as discussed in detail above, Mr. Urtuzuastegui asserts that his use of an assumed name was a "mistake," a "misnomer," caused by his mental incapacity at the time of the filing of the lawsuit. This case is, therefore, distinguishable from both ***Zocaras*** and ***Dotson***. In order for fraud to rise to a level requiring dismissal of a lawsuit under Rule 41, it must be willful or intentional fraud. As discussed in relation to the grant of the motion for summary judgment, there is a dispute of material fact as to whether Mr. Urtuzuastegui, in fact, lacked capacity at the time of the filing of his complaint. Given the dispute of material fact on the issue of capacity, the trial court should have developed the record further on this question. Consequently, and based upon the entire record in this case, it is this Court's conclusion that the involuntary dismissal, under Tennessee Rule of Civil Procedure 41.02, was premature.

For the foregoing reasons, we reverse both the trial court's order granting Appellees' motion for summary judgment, and its order granting Appellees' motion for involuntary dismissal under Tennessee Rule of Civil Procedure 41.02. We remand the case to the trial court for such further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed one-half to the Appellant Roberto Carlos Urtuzuastegui a/k/a Jose M. Carrion-Casillas, and his surety, and one-half to the Appellees, George D. Kirkland, Vicker's Distribution and Transfer, Inc., Vickers Logistics Services, Inc., Vickers Leasing Services, L.L.C., and Vickers Warehouse Services, L.L.C., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

-15-