# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### June 26, 2012 Session

## CHEYENNE DUFFER v. KEYSTOPS, LLC.

**Appeal from the Circuit Court for Davidson County**
**No. 08C1823    Hon. Hamilton V. Gayden, Jr., Judge**

---

**No. M2011-01484-COA-R3-CV - Filed July 31, 2012**

---

This appeal arises out of a personal injury suit, wherein the plaintiff and Dewayne Duffer filed suit against a trucking company for injuries suffered in an accident and for loss of consortium as a result of the accident. Plaintiff's employer intervened to recover worker's compensation benefits paid to plaintiff. Soon thereafter, the trucking company discovered that plaintiff was male, had filed the action using an assumed female identity, and had lied throughout the discovery process. The trucking company filed a motion for summary judgment. The court granted the motion and dismissed plaintiff's and employer's complaints, finding that plaintiff had committed a fraud upon the court and that employer had failed to file suit within the applicable statute of limitations because plaintiff's complaint was rendered void ab initio. Plaintiff and employer appeal. We affirm the dismissal of plaintiff's complaint but reverse the dismissal of employer's complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Peter Andrew Lampros, Atlanta, Georgia, for the appellant, Jason Elmer Johnston a/k/a Cheyenne Duffer.

Charles E. Pierce and Julie Cochran Fuller, Knoxville, Tennessee, for the appellant, Erie Insurance Company.

Richard D. Moore and Timothy A. Drown, Nashville, Tennessee, for the appellee, Keystops, LLC., d/b/a Key Oil Company.

# OPINION

## I. BACKGROUND

Jason Elmer Johnston ("Plaintiff") was employed by Caldwell Paving & Asphalt Company in Tennessee and was assigned to drive a dump truck in connection with his duties. On June 13, 2007, he had worked for the company for approximately nine days when he was involved in an accident with another truck driven by Robert Love and owned by Keystops, LLC ("Keystops"). On that day, Plaintiff's was driving from Nashville to Gallatin, while transporting a load of sand in the dump truck. As he approached the traffic in front of him, he slowly came to a stop "due to congestion or for some other reason." However, Mr. Love was unable to stop and crashed into the rear of Plaintiff's truck, causing Plaintiff's truck to turn over onto the driver's side. Plaintiff crawled out of the passenger's side window and discovered that Mr. Love's truck was on fire, while Mr. Love, who was also on fire, was trapped. Plaintiff fell from his truck, landing on his knee. He then managed to move to the embankment on the side of the road. He was eventually escorted away from the fire shortly before Mr. Love's truck exploded. Mr. Love died from injuries sustained in the accident.

On June 9, 2008, Plaintiff and Dewayne Duffer (collectively "Plaintiffs") filed a personal injury lawsuit against Keystops. The complaint was filed using Plaintiff's assumed identity, Cheyenne Duffer.[1] Plaintiffs asserted that they were husband and wife and referred to Plaintiff using feminine terminology. They alleged that Keystops was liable for Mr. Love's actions and that Mr. Love was negligent in his operation of the vehicle and had caused the accident, injuring Plaintiff. They also alleged that Mr. Love had a poor driving history, that Keystops was aware or should have been aware of Mr. Love's driving history, and that the hiring and retention of Mr. Love amounted to "gross negligence and/or recklessness." They requested damages to compensate them for medical bills, lost income, loss of consortium, loss of use and property damage, pain and suffering, and diminished capacity to earn. They also requested punitive damages, attorney fees, and costs. Keystops eventually admitted liability for the accident but asserted that Plaintiff had not sustained personal injuries "to the extent alleged" and that it was not liable for punitive damages.

On April 15, 2009, Erie Insurance Company ("Erie") filed a motion to intervene pursuant to Rule 24 of the Tennessee Rules of Civil Procedure. Erie alleged that Plaintiff had recovered worker's compensation benefits and that pursuant to Tennessee Code

---

[1] While Plaintiff had breast implants, he had retained his reproductive organs and was for all intents and purposes a man, thereby rendering his marriage to Mr. Duffer, a man, invalid and his claim for loss of consortium without merit. Tenn. Code Ann. § 36-3-113; *see also* Tenn. Code Ann. § 25-1-106. He had also not legally changed his name to Cheyenne Duffer.

Annotated section 50-6-112, it was entitled to intervene in an effort to protect a subrogation lien for the benefits that had been paid and for any benefits that may be paid in connection with the accident in the future. The court granted the motion to intervene, and Erie filed its intervening complaint on September 21, 2009.

In 2009, Plaintiff responded to the first set of interrogatories requested by Keystops. Plaintiff listed his name as Cheyenne K. Duffer, denied ever having been involved in any prior accidents or injuries that required treatment from a physician, and denied ever having been involved in any civil lawsuits, including any prior worker's compensation claims. As discovery progressed, Keystops learned that Plaintiff was a man, that his name was Jason Elmer Johnston, that he had been legally married to a woman, and that he had fathered three children prior to his assumption of the female persona named in the complaint. Keystops also learned that Plaintiff had been married to a man named David Palmer, had filed a civil suit with Mr. Palmer relating to a prior vehicular accident, had sought worker's compensation benefits in a prior case, and had been involved in a civil suit to recover personal property in which it was alleged that he had unlawfully retained ten exotic birds that belonged to Gerald Stewart.

Armed with this information, Keystops deposed Plaintiff on April 23, 2010. These depositions were videotaped and transcribed. Keystops questioned Plaintiff relating to his life prior to his assumption of the name Cheyenne Duffer. Plaintiff denied that he had ever been married to a woman, that he had ever fathered any children, and that he had ever lived as a man. When confronted with pictures of each of his three children and his prior wife, he pretended that he did not recognize them. Instead of admitting his past life when he was confronted with a copy of his birth certificate, Plaintiff concocted an elaborate story. He alleged that Jason Elmer Johnston was his twin brother and that his mother refused to raise him because he was a hermaphrodite.[2] He asserted that he had never met his brother but admitted that he had contacted him on at least one occasion. He alleged that he and his brother scheduled a time to meet but that his brother died in a car accident on the way to meet him. When asked about his marriage to Mr. Palmer, he alleged that the marriage was never legal because they had forgotten to submit the appropriate paperwork. He denied that the marriage was annulled because he was a man.[3]

At first, Plaintiff denied that he had ever been involved in any prior accidents, had ever filed a lawsuit relating to those accidents, and had ever filed for worker's compensation

---

[2] He later admitted that he was not a hermaphrodite and did not have female reproductive organs.

[3] Mr. Johnston and Mr. Palmer were married in Kentucky, which does not recognize marriages between members of the same sex. *See* Ky. Rev. Stat. Ann. § 402.020(1)(d).

benefits. Upon admitting that he had been involved in a prior vehicular accident, he alleged that he did not remember being treated by several doctors for his injuries and that he had forgotten that he had filed a lawsuit for injuries he sustained in that accident. Upon admitting that he had filed a prior worker's compensation claim, he alleged that he never received any money. He refused to acknowledge any other worker's compensation claims that may have been filed using his alias. He also denied any knowledge relating to a man named Mr. Stewart. When confronted with a complaint filed by Mr. Stewart, he alleged that he had simply forgotten that he had paid Mr. Stewart $5,000 for his unlawful retention of Mr. Stewart's exotic birds in fulfillment of the judgment entered against him.

Several months later, Mr. Duffer voluntarily dismissed his claim for loss of consortium without prejudice. Approximately five months later, Plaintiff filed an amended complaint using his alias, Cheyenne Duffer, and removing the claim for loss of consortium and any mention of Mr. Duffer as a party. Eight days later, Keystops filed a motion for summary judgment, alleging that Plaintiff "acted contemptuously and ha[d] engaged in a course of conduct that was designed to thwart the possibility of a fair trial by filing an initial complaint and an amended complaint using a false identity and by committing perjury multiple times while giving sworn testimony in the lawsuit."

Approximately one month later, Plaintiff responded to the motion for summary judgment by stating,

[Plaintiff's] lifestyle, while admittedly outside of traditional societal norms, has absolutely no bearing on the fact that []he was injured as a result of [Keystop's] negligence, suffered because of that negligence, and is entitled to compensation because of that negligence.

Plaintiff was born Jason E. Johnston in Kansas on January 8, 1966. Approximately twelve years ago, Plaintiff began living and identifying as a woman. Plaintiff began using the name Cheyenne, underwent cosmetic breast enhancement surgery, and changed the name on h[is] driver's license and social security card to reflect the adopted name of Cheyenne. In all aspects of h[is] life, Plaintiff lives as a woman. Plaintiff has not used the name Jason Johnston since []he adopted the name Cheyenne and does not identify [himself] as Jason Johnston. [H]e is, for all intents and purposes, Cheyenne Duffer. Plaintiff thought that by changing the identity on h[is] driver's license and social security card, []he would thereafter legally be known by h[is] adopted name.

Plaintiff alleged that issues concerning his identity were not germane to the claims present in the case, that he did not use the name for an improper purpose, and that Keystops cannot show that it was prejudiced by the use of the name because it clearly knew that he was born Jason Elmer Johnston given the extensive questioning about his gender and background. He also alleged that the characterization of his testimony as perjury was improper when the majority of the testimony was indicative of someone who had a "poor memory of certain events." He also sought leave from the court to file an amended complaint, substituting Jason Elmer Johnston as the complaining party. This request was never granted.

Following a hearing on Keystops's motion for summary judgment, the court found that Plaintiff committed a fraud upon the court by using a false identity, that he "further perpetrated" that fraud during the discovery process, and that he "intentionally lied under oath in an attempt to conceal his fraud." The court held that the fraud was willful and intentional because Plaintiff was not "mentally impaired or incapacitated" when he decided to use his alias and "then lied under oath in an attempt to conceal his fraud." Relative to Plaintiffs, the court found that they filed the complaint "in bad faith because loss of spousal consortium damages are not available under Tennessee law to Dewayne Duffer." The court declared that the original complaint was void ab initio and was a nullity and held that the claims were barred by law because a proper lawsuit was not commenced "within Tennessee's one year statute of limitations for personal injury actions." The court further held that Plaintiff's "fraud upon the [c]ourt and false testimony during discovery also support[ed] involuntary dismissal of [] Plaintiff's lawsuit pursuant to Rule 41.02(1) of the Tennessee Rules of Civil Procedure." Relative to Erie, the court held that Erie's claims were barred by Tennessee's statute of limitations. The court found that Erie failed to file suit against Keystops within 18 months of the date of the injury and that Erie's intervening complaint could not relate back to Plaintiff's complaint because that complaint was void ab initio. In so holding, the court dismissed all claims against Keystops with prejudice.

Plaintiff filed a motion to alter or amend, arguing that he never provided "untruthful testimony" about issues that were germane to the case and that Keystops was aware of his identity. He asserted that actions should not be dismissed for failure to name the correct party unless a reasonable time had been provided to allow the real party in interest to ratify, join, or substitute itself as the party in the action. Relative to his discovery responses, he asserted that the court had disregarded Tennessee law by dismissing the case when an order compelling truthful responses had never been filed. He claimed that Keystops was dishonest by failing to notify him about a subpoena served in Kansas. Lastly, he argued that Keystops did not file a Rule 41.02(1) motion requesting dismissal. Erie did not object to the motion and requested that the same relief be granted to it if relief were granted to Plaintiff.

Keystops responded by asserting that Plaintiff's false testimony throughout the discovery process was pertinent to the issues involved in the lawsuit. Keystops asserted that Plaintiff's medical, accident, and litigation history were extremely pertinent and that whether Mr. Duffer could recover damages on a loss of consortium theory was also pertinent. Keystops alleged that it suffered prejudice as a result of Plaintiff's dishonesty because it was forced to conduct extensive investigations in multiple states to uncover Plaintiff's identity and his medical, accident, and litigation history. Keystops noted that it requested dismissal pursuant to Rule 41.02(1) in its reply to Plaintiff's response to the motion for summary judgment but admitted that it never filed a specific motion to dismiss on that ground. Keystops also admitted that it failed to notify Plaintiff regarding the subpoena to Kansas.

Plaintiff responded that Keystops had failed to establish prejudice when its extensive investigations related to information that was not germane to the case. He also asserted that dismissal pursuant to Rule 41.02(1) based upon his failure to comply with rules was improper because he should have been given the opportunity to amend his complaint before such a harsh sanction was imposed.

The court upheld the dismissal of the complaint but reversed its holding that the dismissal of the complaint was with prejudice. The court held that Plaintiff could re-file the action, provided he paid the discretionary costs that were awarded to Keystops by separate order. The court specifically declined to address whether a complaint filed in Plaintiff's legal name would relate back to the original complaint. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A. Whether the trial court erred in dismissing Plaintiff's complaint.

B. Whether the trial court erred in dismissing Employer's intervening complaint.

C. Whether the dismissal of the action should have been made with prejudice.

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn.

2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment "must either (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5; *see Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV. DISCUSSION

### A.

### 1.

The court's grant of the motion for summary judgment was based upon the initial finding that the complaint was void ab initio because Plaintiff had committed a fraud upon the court. The court held that Plaintiff had committed fraud by filing the complaint and the

amended complaint under an assumed name and that he "further perpetrated his fraud by failing to truthfully answer discovery." Having found that the complaint was void ab initio, the court held that Plaintiff had failed to commence a proper lawsuit within the statute of limitations for personal injury actions. Plaintiff argues that the trial court erred in granting the motion for summary judgment because he did not create the alias with malicious intent or to deceive the court. He also asserts that Keystops was not prejudiced by his use of the alias. Keystops responds that the court did not err in granting the motion for summary judgment.

Plaintiff asserts that this court should follow the decisions reached in *Sanchez v. Litzenberger*, No. 09 Civ. 7207 (THK), 2011 WL 672413 (S.D.N.Y. Feb. 24, 2011) and *Rodriquez v. City of Highland Park*, No. 01 C 4486, 2002 WL 31557628 (N.D.Ill. Nov. 15, 2002). In *Sanchez* and *Rodriquez*, the courts ultimately held that the use of an alias did not warrant dismissal of the case when the plaintiff used the alias prior to the filing of the complaint, the prejudice was minimal, and the use of the alias was unrelated to the liability issues involved in the case.

The memorandum opinions rendered in *Sanchez* and *Rodriquez* are merely persuasive authority from other jurisdictions. Further, the facts presented in this case are materially different. Unlike the cases cited by Plaintiff, the improper use of an alias in this case related to an issue that was relevant, namely Plaintiff's gender. Mr. Duffer could not assert a claim for loss of consortium if Plaintiff was not his legal spouse. Tenn. Code Ann. § 36-3-113; *see also* Tenn. Code Ann. § 25-1-106. Consequently, the use of a female identity was false and material to issues presented in the case. Plaintiff asserts that his concealment of his true identity was not made with malicious intent but that he simply believed that he had legally changed his name. However, when given the chance to acknowledge his former identity and his gender, Plaintiff fabricated an elaborate story.[4] Additionally, the court's finding that the complaint was void ab initio was not merely based upon Plaintiff's use of an alias. The court stated,

> This case is not about [] Plaintiff's sexual orientation or lifestyle choices. This case is about [] Plaintiff's *flagrant contempt for the judicial process*.

(Emphasis added). In its order, the court noted that Plaintiff failed to truthfully answer discovery, that Plaintiff lied under oath in an attempt to conceal his fraud, and that the complaint itself was filed in bad faith because loss of consortium damages were not available to Mr. Duffer.

---

[4]Plaintiff does not assert that he lacked the mental capacity to acknowledge his identity or to understand the difference between truth and falsehood.

Plaintiff also asserts that the grant of the motion for summary judgment was improper because Keystops did not rely on the improper representations to its detriment. *See Urtuzuastegui v. Kirkland*, 366 S.W.3d 128, 133 (Tenn. Ct. App. 2011) (listing the elements of positive fraud). The court's ruling in this case was based upon the fraud perpetrated *upon the court* through the use of the alias and through Plaintiff's continued refusal to offer truthful testimony throughout the discovery process. Additionally, we are hesitant to say that Keystops was not harmed by Plaintiff's fraud simply because Keystops uncovered Plaintiff's identity and questionable litigation history during discovery and was wise to Plaintiff's attempts to conceal the truth. Keystops spent needless hours investigating Plaintiff's identity and litigation history, matters which should have been truthfully disclosed. Accordingly, we conclude that the court did not err in declaring Plaintiff's complaint void ab initio because Plaintiff perpetrated a fraud upon the court. Likewise, we also conclude that the court did not err in granting the motion for summary judgment because Plaintiff failed to file a valid complaint within the one year statute of limitations for personal injury actions. Tenn. Code Ann. § 28-1-103(a)(1).

2.

In addition to granting the motion for summary judgment, the court held that dismissal was appropriate pursuant to Rule 41.02(1) of the Tennessee Rules of Civil Procedure. On appeal, the parties do not dispute the court's authority to dismiss the case pursuant to Rule 41.02(1). Instead, Plaintiff argues that dismissal of the case based upon a discovery violation was inappropriate when his actions exhibited "at most, confusion or mere negligence." He asserts that the court abused its discretion when it imposed its most severe sanction without consideration of Rules 15 and 17 of the Tennessee Rules of Civil Procedure. Keystops responds that Rules 15 and 17 cannot be used to cure willful fraud.

"A trial court's decision to dismiss under Tennessee Rules of Civil Procedure 41.02(1) is reviewed under an abuse of discretion standard." *Kirkland*, 366 S.W.3d at 136-37 (citing *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000)). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

"Trial court's possess inherent, common-law authority to control their dockets and the proceedings in their courts." *Hodges*, 43 S.W.3d at 921. This "authority is quite broad and

includes the express authority to dismiss cases for failure . . . to comply with the Tennessee Rules of Civil Procedure." *Id.* Rule 41.02(1) provides, in pertinent part,

> For failure of the plaintiff to . . . *comply with these rules* or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant.

(Emphasis added). Here, Plaintiff failed to provide the name of the true party in interest and filed untruthful responses in answer to interrogatory questions. *See* Tenn. R. Civ. P. 10.01 (providing that the complaint shall include the name of all parties); Tenn. R. Civ. P. 33.01 ("Each interrogatory shall be answered separately and fully in writing *under oath*, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer."). Plaintiff also lied while under oath during his deposition. *See* Tenn. R. Civ. P. 30.03 (providing that the deponent is under oath while testifying during a deposition).

We acknowledge that Rule 17 of the Tennessee Rules of Civil Procedure allows for the substitution of the real party in interest when a mistake has been made in naming the party and that Rule 15 of the Tennessee Rules of Civil Procedure provides that the properly accepted amended complaint will relate back to the date of the original pleading. However, these rules were not intended to authorize suits in the name of "fictitious parties" but were intended to apply to cases in which the substitution of the real party in interest is "necessary to avoid injustice." *Chapman v. King*, 572 S.W.2d 925, 929 (Tenn. 1978) (internal citation and quotation omitted). We do not believe that application of these rules was necessary to avoid injustice when Plaintiff concocted an elaborate story after he was given the chance to acknowledge his true identity. Plaintiff's conduct during the deposition belies his assertion that he used the alias because he simply believed that he had legally changed his name. Additionally, Plaintiff did not seek to amend the complaint until after he was forced to acknowledge his untruthful testimony and his true identity.

Moreover, the dismissal of the action as a sanction was based upon Plaintiff's failure to provide his correct name *and* upon his untruthful testimony throughout the discovery process concerning matters other than his identity. Specifically, Plaintiff denied any knowledge of prior accidents, civil suits, or claims for worker's compensation. However, when confronted with documents during the deposition, Plaintiff promptly remembered the pertinent details. For example, Plaintiff denied any knowledge of Mr. Stewart, who had sued him for the unlawful retention of ten exotic birds, but minutes later remembered that he had paid Mr. Stewart $5,000 in fulfillment of a judgment filed against him. Plaintiff alleges that these examples are merely indicative of someone with a faulty memory. We, like the trial court, are not persuaded by this argument. Having reviewed the deposition testimony and pertinent documents, we agree with the trial court that Plaintiff exhibited a "flagrant

contempt for the judicial process" and that Plaintiff's actions justified the imposition of the most severe sanction available to the court, namely the involuntary dismissal of Plaintiff's claims. Accordingly, we conclude that the trial court did not abuse its discretion in dismissing Plaintiff's claims pursuant to Rule 41.02(1) of the Tennessee Rules of Civil Procedure.

B.

Erie argues that the trial court erred in granting the motion for summary judgment relative to its complaint. Citing *Boyd v. McConnell*, 212 S.W.2d 365 (Tenn. 1948) and *Cooper v. Logistics Insight Corp.*, No. M2010-01262-COA-R3-CV, 2011 WL 1874577 (Tenn. Ct. App. May 16, 2011), *perm. app. granted* (Tenn. Sept. 21, 2011), Erie contends that an intervening employer may pursue the enforcement of its subrogation lien even when the injured worker's original complaint is no longer pending before the court. In the alternative, Erie asserts that it is entitled to equitable relief because it should not be punished for Plaintiff's actions. Keystops responds that Erie did not have a direct cause of action because Plaintiff filed a lawsuit, thereby entitling Erie the right to merely intervene and protect its subrogation lien. Keystops asserts that the dismissal of Plaintiff's complaint operated as a dismissal of the intervening complaint. In the alternative, Keystops responds that Erie cannot pursue an independent cause of action because the statute of limitations for bringing such an action has expired pursuant to Tennessee Code Annotated section 50-6-112(d)(2). Keystops asserts that a newly filed intervening complaint cannot relate back to the filing of Plaintiff's complaint because that complaint was rendered void ab initio.

The court granted the motion for summary judgment relative to Erie because Erie failed to file its own suit against Keystops within 18 months of the injury. The court held that the intervening complaint could not relate back to the filing date of Plaintiff's complaint because that complaint was rendered void ab initio, meaning that it should be treated as if it never existed. In Tennessee, an employer seeking to enforce and protect a subrogation lien against a third-party tortfeasor has two options. The employer may intervene in the action filed by the employee to protect and enforce its subrogation lien. This right is derived from Tennessee Code Annotated section 50-6-112(c)(1), which provides,

> (c)(1) In the event of a recovery against the third person by the worker, or by those to whom the worker's right of action survives, by judgment, settlement or otherwise, and the employer's maximum liability for workers' compensation under this chapter has been fully or partially paid and discharged, the employer shall have a subrogation lien against the recovery, and *the employer may intervene in any action to protect and enforce the lien*.

-11-

(Emphasis added). If the employee fails to file an action within one year of the date of the injury, the employer may file its own action against the third-party tortfeasor. This right is derived from Tennessee Code Annotated section 50-6-112, which provides,

> (d)(1) The action against the other person by the injured worker, or those to whom the injured worker's right of action survives, must be instituted in all cases within one (1) year from the date of injury.
>
> (d)(2) Failure on the part of the injured worker, or those to whom the injured worker's right of action survives, to bring the action within the one-year period shall operate as an assignment to the employer of any cause of action in tort that the worker, or those to whom the worker's right of action survives, may have against any other person for the injury or death, and the employer may enforce the cause of action in the employer's own name or in the name of the worker, or those to whom the worker's right of action survives, for the employer's benefit, as the employer's interest may appear, and the employer shall have *six (6) months after the assignment* within which to commence the suit.
>
> (d)(3) If the cause of action described in subsection (a) arises in a jurisdiction other than this state and the other jurisdiction has a statute of limitations for personal injury and wrongful death greater than the one-year statute of limitations provided in this state, the court hearing the cause of action shall apply the statute of limitations that provides the injured worker, or those to whom the injured worker's right of action survives, the greatest amount of time in which to institute an action.
>
> (d)(4) Under no circumstances shall the negligent party described in subsection (a) benefit from this subsection (d).

(Emphasis added).

In *Cooper*, the employee and the tortfeasor settled the claim without the employer's involvement. 2011 WL 1874577, at *1. On appeal, the court held that the employer was "entitled to present proof as to the likelihood and amount of future medical expenses they would incur on behalf of" the employee pursuant to Tennessee Code Annotated section 50-6-112(c)(2) in support of it subrogation lien. *Id.* at *4. The court continued that the employer did not have a separate cause of action against the tortfeasor because the employee had filed a suit within the one year statute of limitations. *Id.* at *5. In *Boyd*, the court held that the

complaint filed by an intervenor with a direct cause of action against the defendant survived the dismissal of the initiating complaint. 212 S.W.3d at 366.

Like *Cooper*, Erie was limited to filing an intervening complaint because Plaintiff filed his suit within one year of the statute of limitations. Unlike *Cooper*, this case presents an interesting problem because Plaintiff never recovered from the tortfeasor. On the contrary, Plaintiff's complaint was dismissed. Similar to *Boyd*, Erie had no control over Plaintiff's actions that resulted in the dismissal of the initiating complaint from which Erie's intervening complaint derived its legitimacy. Keystops asks this court to preclude Erie's recovery of benefits bestowed upon Plaintiff as a result of Keystops's negligence because the time for Erie to file its own action had passed due to Plaintiff's failure to bring a proper cause of action. We find this argument troubling "when the statute was passed to *inter alia* facilitate an employer's recovery against tortious third parties when the injured employee has failed to bring an action against such tortious third parties." *Plough, Inc. v. Premier Pneumatics, Inc.*, 660 S.W.2d 495, 499 (Tenn. Ct. App. 1983). Additionally, the legislature specifically provided, "[u]nder no circumstances shall the negligent party" benefit from the limitations imposed upon the employer in subsection (d) of the statute. Tenn. Code Ann. § 50-6-112(d)(4) (emphasis added). In keeping with that proviso, we hold that the rendering of Plaintiff's complaint as void ab initio operated as an assignment of Plaintiff's cause of action to Erie, providing Erie with six months within which to file its complaint. Accordingly, we conclude that the trial court erred in granting the motion for summary judgment as it related to Erie because Erie filed its complaint prior to the assignment.

C.

Having concluded that the court erred in granting the motion for summary judgment as it related to Erie, we reject the assertion that the court should have dismissed Erie's complaint with prejudice. Keystops and Plaintiff agree that the court's amendment of the order to reflect the dismissal of Plaintiff's complaint as a dismissal *without* prejudice was ineffective. In this case, the grant of the motion for summary judgment and the dismissal pursuant to Rule 41.02(1) was tantamount to a dismissal of the complaint with prejudice because the statute of limitations had passed. Any amended complaint using Plaintiff's legal name would not relate back to the original complaint because that complaint was rendered a legal nullity. Accordingly, we direct the trial court to modify the final order to reflect that Plaintiff's complaint was dismissed *with* prejudice.

## V. CONCLUSION

The judgment of the trial court is affirmed in part, as to the grant of the motion for summary judgment relative to Plaintiff's complaint and the dismissal of Plaintiff's complaint

pursuant to Rule 41.02(1) of the Tennessee Rules of Civil Procedure. The judgment of the trial court is reversed in part, as to the grant of the motion for summary judgment relative to Erie's complaint and the alteration of the judgment to reflect that the dismissal of Plaintiff's complaint was without prejudice. Upon remand, the court is instructed to modify the judgment to reflect that the dismissal of Plaintiff's complaint was with prejudice. Costs of the appeal are taxed one-half to the appellant, Jason Elmer Johnston a/k/a Cheyenne Duffer, and one-half to the appellee, Keystops, LLC., d/b/a Key Oil Company.


_____
JOHN W. McCLARTY, JUDGE